**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CORNELIUS ANYERE, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-cv-2769 |
| | ) | |
| **WELLS FARGO CO.,** | ) | Judge Lefkow |
| | ) | |
| Defendant. | ) | |

**DEFENDANT WELLS FARGO'S OPPOSITION TO PLAINTIFFS' MOTION FOR
JUDICIALLY SUPERVISED NOTICE UNDER 29 U.S.C. § 216(b)**

Joan B. Tucker Fife
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
(P) 415-591-1000
(F) 415-591-1400
jfife@winston.com

Emilie C. Woodhead
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA  90071
(P) 213-615-1700
(F) 213-615-1750
ewoodhead@winston.com

Amanda C. Wiley
WINSTON & STRAWN LLP
35 West Wacker Avenue
Chicago, IL 60601
(P) 312-558-5600
(F) 312-558-5700
awiley@winston.com

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...........................................................................................1

II.    PROCEDURAL BACKGROUND.................................................................2

       A.    The Northern District of California Denied Conditional Certification of
             and Notice to an Almost Identical Nationwide and Statewide Collective
             Action.........................................................................................................2

       B.    Plaintiffs' Allegations in This Case ..........................................................2

III.   STATEMENT OF FACTS ..............................................................................2

       A.    The Collective Class(es) That Plaintiffs Seek to Conditionally Certify..................2

       B.    Wells Fargo's Policies Require Accurate Timekeeping and Payment for
             All Hours....................................................................................................3

       C.    Plaintiffs' Sole Support for Conditional Certification are Declarations that
             Directly Contradict Plaintiffs' Own Self-Reported Time Records.........................4

             1.    Plaintiffs Regularly Recorded and Were Paid for Significant
                   Amounts of Overtime. ................................................................5

             2.    Plaintiffs Regularly Recorded that They Arrived to Work Prior to
                   9:00 a.m.....................................................................................7

             3.    Plaintiffs Were Not Required to Work Through Lunch Unpaid, and
                   Each Reported and Were Paid for "Working Lunches." .............................8

             4.    Plaintiffs Recorded and Were Paid Overtime For Work After 6:00
                   p.m. ............................................................................................8

             5.    Plaintiffs Recorded and Were Paid for Work on the Weekends................9

       D.    Plaintiffs' False Declarations Are Further Contradicted by the Testimony
             of their Supervisors. ...................................................................................9

IV.    ARGUMENT ...................................................................................................9

       A.    The Legal Standard for Conditional Certification and Court-Authorized
             Notice Under 29 U.S.C. § 216(b). ........................................................10

       B.    Plaintiffs Have Failed to Make Even a Modest Showing that They and
             Potential Plaintiffs Were Victims of a Single Policy or Plan That Violated
             the Law.....................................................................................................11

i

1.   Plaintiffs' Attempts to Show a Common Policy or Practice Fail Because Their Declarations Are Fabricated. ...............................................12

2.   Even if True, the Five Declarations Fail to Identify a Common Policy that Merits Conditional Certification...............................................13

3.   Any Individual's Entitlement to Overtime Requires a Fact-Specific, Individualized Inquiry Unsuitable for Collective Action. ..........16

C.   The Court Should Deny Plaintiffs' Motion Because the Geographic Scope of the Proposed Collective Action is Overbroad. ...................................................19

D.   The Statute of Limitations Should Not Be Tolled. ...............................................19

V.   CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acevedo v. Ace Coffee Bar, Inc.*,
   248 F.R.D. 550 (N.D. Ill. 2008) ...................................................................................10, 11

*Adair v. Wisconsin Bell, Inc.*,
   No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)............10, 11, 12, 13, 14, 15, 17

*Basco v. Wal-Mart Stores, Inc.*,
   No. Civ.A. 00-3184, 2004 WL 1497709 (E.D. La. July, 2, 2004)........................14, 16, 17, 18

*Bernard v. Household Int'l, Inc.*
   231 F.Supp. 2d 433 (E.D. Va. 2002) ...................................................................................17

*Brooks v. BellSouth Telecommunications, Inc.*,
   164 F.R.D. 561 (N.D. Ala. 1995)..........................................................................................16

*Bryant v. Gardner*,
   587 F. Supp. 2d 951 (N.D. Ill. 2008) ...................................................................................12

*Cada v. Baxter Healthcare Corp.*,
   920 F.2d 446 (7th Cir. 1990) ...............................................................................................20

*Castle v. Wells Fargo Fin., Inc.*,
   No. C 06-4347 SI, 2008 WL 495705 (N.D. Cal. Feb. 20, 2008)...................................2, 16, 18

*Champneys v. Ferguson Enter. Inc.*,
   No. IP 02-535-C H/K, 2003 WL 1562219 (S.D. Ind. Mar. 11, 2003)....................................17

*Collazo v. Forefront Educ., Inc.*,
   No. 08-cv-5987, 2010 WL 335327 (N.D. Ill. Jan. 28, 2010)............................................11, 19

*Dager v. City of Phoenix*,
   No. 2:06-cv-01412 JWS, 2006 U.S. Dist. LEXIS 91336 (D. Ariz. Dec. 15, 2006) ...............14

*Diaz v. Elec. Boutique of America*,
   No. 04CV0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ...................................17

*Dudley v. Tex. Waste Sys.*,
   No. SA-05-CA-0078-XR, 2005 WL 1140605 (W.D. Tex. May 16, 2005) .............................17

*Dybach v. State of Fla. Dept. of Corrections*,
   942 F.2d 1562 (11th Cir. 1991) ...........................................................................................17

*England v. New Century Fin. Corp.*,
  370 F. Supp. 2d 504 (M.D. La. 2005) ...................................................................17

*Flores v. Lifeway Foods, Inc.*,
  289 F. Supp. 2d 1042 (N.D. Ill. 2003) ..................................................................11

*Freeman v. Wal-Mart Stores, Inc.*,
  256 F. Supp. 2d 941 (W.D. Ark. 2003)....................................................10, 11, 18

*Harrison v. McDonald's Corp.*,
  411 F. Supp. 2d 862 (S.D. Ohio 2005) ..................................................................17

*Haynes v. Singer Co.*,
  696 F.2d 884 (11th Cir. 1983) ........................................................................10, 14

*Hinojos v. The Home Depot, Inc.*,
  No. 2:06-CV-00108, 2006 WL 3712944 (D. Nev. Dec. 1, 2006) ..........................17

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989)........................................................................................10, 19

*Holt v. Rite Aid Corp*,
  333 F. Supp. 2d 1265 (M.D. Ala. 2004) ................................................................16

*Howard v. Securitas Sec. Svcs., USA Inc.*,
  No. 08 C 2746, 2009 WL 140126 (N.D. Ill. Jan. 20 2009) ...................................13

*Irwin v. Dep't of Veterans Affairs*,
  498 U.S. 89 (1990)..................................................................................................19

*Lawrence v. Philadelphia*,
  03-CV-4009, 2004 WL 945139 (E.D. Pa. April 29, 2004)....................................17

*Lusardi v. Xerox Corp.*,
  118 F.R.D. 351 (D.N.J. 1987)................................................................................14

*Marsh v. Butler County School Sys.*,
  242 F. Supp. 2d 1086 (M.D. Ala. 2003) ..........................................................13, 17

*Molina v. First Line Solutions LLC*,
  566 F. Supp. 2d 770 (N.D. Ill. 2007) ...............................................................16, 19

*North v. Bd. of Trustees of Ill. State Univ.*,
  ---F.Supp.2d---, 2009 WL 3769907 (C.D. Ill. Nov. 9, 2009) ...............................10

*Partlow v. Jewish Orphans' Home of So. Cal., Inc.*,
  645 F.2d 757 (9th Cir. 1981) .................................................................................19

iv

*Powers v. Centennial Communications Corp.*,
    --- F. Supp. 2d ----, No. 1:08-cv-208-PPC, 2009 WL 5170161 (N.D. Ind. Dec. 14,
    2009) ....................................................................................................................13

*Ray v. Motel 6 Operating, LP*,
    No. 3-95-828, 1996 WL 938231 (D. Minn. Mar. 18, 1996) ...................................18

*Reich v. Homier Distributing Co.*,
    362 F. Supp. 2d 1009 (N.D. Ind. 2005) .................................................................16

*Riddle v. Nat'l Sec. Agency, Inc.*,
    No. 05 C 5880, 2007 WL 2746597 (N.D. Ill. Sept. 13, 2007).................................10

*Schultz v. American Family Mut. Ins. Co.*,
    No. 04 C 5512, 2005 WL 5909003 (N.D. Ill. Nov. 1, 2005)...................................20

*Sheffield v. Orius Corp.*,
    211 F.R.D. 411 (D. Or. 2002) ..........................................................................16, 17

*Simmons v. T-Mobile USA, Inc.*,
    No. H-06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007)..................................17

*Szabo v. Bridgeport Machs, Inc.*
    249 F.3d 672 (7th Cir. 2001) .................................................................................13

*Thompson v. Speedway SuperAmerica LLC*,
    No. 08-CV-1107(PJS/RLE), 2009 WL 130069 (D. Minn. Jan. 20, 2009) .................13, 15, 17

*Tucker v. Labor Leasing, Inc.*,
    872 F.Supp. 941 (M.D. Fla. 1994).........................................................................17

*Velasquez v. HSBC Finance Corp.*,
    No. 08-4592 SC, 2010 WL 625357 (N.D. Cal. Feb. 18, 2010) ...............................17

*West v. Border Foods, Inc.*,
    Civil No. 05-2525 (DWF/RLE), 2006 WL 1892527 (D. Minn. July 10, 2006).....................17

*Williams v. Accredited Home Lenders, Inc.*,
    No. 1:05-CV-1681-TWT, 2006 WL 2085312 (N.D. Ga. July 25, 2006) ................17

*Woods v. New York Life Ins. Co.*,
    686 F.2d 578 (7th Cir. 1982) .................................................................................10

**STATUTES**

29 U.S.C. § 216(b) ...................................................................................................10

29 U.S.C. § 256........................................................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(g) ...................................................................................................12

Fed. R. Evid. § 402 .......................................................................................................5

Fed. R. Evid. § 602 ....................................................................................................4, 5

Fed. R. Evid. § 701 .......................................................................................................5

Fed. R. Evid. § 702 .......................................................................................................5

Fed. R. Evid. § 704 .......................................................................................................5

Fed. R. Evid. § 801 .......................................................................................................5

Fed. R. Evid. § 802 .......................................................................................................5

Fed. R. Evid. § 901 ....................................................................................................4, 5

Defendant, Wells Fargo, responds to and opposes Plaintiffs' motion to conditionally certify the collective action, and their request that the Court authorize notice to be sent to credit managers employed by Wells Fargo in Illinois and Indiana.

## I. INTRODUCTION

Plaintiffs bear the burden at this stage to make a minimal showing that they and the proposed collective action members were victims of an illegal policy or plan.  To do so, Plaintiffs attempt to paint a picture of a Wells Fargo that so tightly controlled their time entries that they could not record more than 40 hours per week.  This is fabrication.  Plaintiffs' sole evidence – five declarations – is directly contradicted by their own self-reported time records, which their supervisors could not alter once entered.  As of the filing of the complaint, the declarants collectively recorded and were paid for over 1176 overtime hours for work done before and after normal work hours, during working lunches, and on Saturdays.  Plaintiffs have failed to demonstrate they were victims of a "common policy" to deny credit managers overtime.

Even if Plaintiffs' declarations were reliable, they do not demonstrate a "policy" or "plan" supporting conditional certification.  At best, the declarations reflect anecdotal stories about a few branch managers acting in violation of company policy to pay overtime.  These alleged FLSA violations stemming from individual supervisors' enforcement decisions, rather than a centralized policy or plan, are not appropriate for collective treatment.  Plaintiffs do not support their claims that these alleged illegal practices extend statewide in Illinois and Indiana.

Conditional certification also must be denied because individual factual determinations predominate each credit manager's individual claims, making a trial of a collective action unwieldy and impossible to manage.  Plaintiffs have failed to meet their burden under even the "lenient" first-stage standard, and their motion for conditional certification of and notice to the proposed collective class should be denied.

1

## II.  PROCEDURAL BACKGROUND

**A.  The Northern District of California Denied Conditional Certification of and Notice to an Almost Identical Nationwide and Statewide Collective Action.**

In *Castle v. Wells Fargo Fin., Inc.*, No. C 06-4347 SI, 2008 WL 495705 (N.D. Cal. Feb. 20, 2008), another district court denied conditional certification and notice to a proposed collective class of Wells Fargo credit managers, finding "numerous individual issues that make certification inappropriate." *Id.* at *2.  The court ruled that the plaintiffs could not maintain a collective class on a nationwide or <u>statewide</u> basis because they had "not identified a common policy or practice" to deny them overtime pay.  *Id.*  Thus, the court held that individual issues predominated such that the employees are not similarly situated.  *Id.* at *5.

**B.  Plaintiffs' Allegations in This Case**

Plaintiffs here allege the same claims for overtime compensation.  They claim:  (1) credit managers record overtime hours, but supervisors alter their time records to reflect only 40 hours per week; and (2) credit managers do not record over 40 hours per week even if they work more hours, in order to avoid verbal discipline.  (*See* Amended Complaint ¶¶ 25-30.)  Plaintiffs allege a statewide collective class of credit managers in Illinois.  (*Id.* at ¶¶ 5, 10, 34.)

## III.  STATEMENT OF FACTS

**A.  The Collective Class(es) That Plaintiffs Seek to Conditionally Certify.**

Plaintiffs seek to certify all credit managers who worked for Wells Fargo Financial branches in Illinois and Indiana over the last three years.  This includes two to seven credit managers employed at any one given time in over 43 branches, in approximately seven districts, in four regions, in two divisions.[1]  (Declaration of Sharon Louis-Goldford ("Goldford Decl.")

---

[1] Wells Fargo credit managers work in Wells Fargo Financial branches that are supervised by branch managers.  Branch managers report to district managers, who supervise multiple branches.  District

¶ 3.)[2]  None of Plaintiffs' five declarants provide evidence about any pay practices in Indiana.[3]

**B.**　**Wells Fargo's Policies Require Accurate Timekeeping and Payment for All Hours.**

Wells Fargo's policies require credit managers to enter their time accurately and to be paid for all time entered.  Wells Fargo *trusts and requires* its credit managers to:  (a) enter their actual time worked into a web-based timekeeping system called "Webtime"; and (b) to affirmatively attest to the accuracy of their time records.  (Declaration of Teresa Swanson ("Swanson Decl.") ¶ 4, 8-9, Ex. A.)  In Webtime, credit managers enter their work start time, time out for meal breaks, time back in from meal breaks, and end work time for every day they work – and can do so to the minute.  (*Id.* at ¶ 4.)  Credit managers are required to enter their time on a daily basis, and can enter time contemporaneously.  (*Id.* at ¶ 7.)  At the end of each week, credit managers are required to review their time records and certify "that all the information on the timesheet – hours worked or taken as time off and meal and rest period status – is accurate" *before* they submit their hours to payroll.  (*Id.* at ¶ 9.)  Failure to accurately record time is a violation of company policy.  (Goldford Decl. ¶ 7, Ex. A; Swanson Decl. ¶ 9.)[4]

After a credit manager enters his or her own time, *supervisors cannot alter the log in or log out times*.  (Swanson Decl. ¶ 11.)[5]  In fact, the only "overrides," or changes an immediate

---

managers report to regional managers who, in the Midwest and East, each oversee three or more states.  Regional managers report to division managers.  Illinois is divided into three separate regions, in two different divisions.  Indiana is in a fourth, separate region.  (Goldford Decl. ¶ 2.)

[2] All declarations submitted by Wells Fargo in support of this response are attached as exhibits to the Declaration of Joan B. Tucker Fife ("Fife Decl."), filed concurrently herewith.

[3] The only evidence from anyone who worked in Indiana during the relevant timeframe is from one of Wells Fargo's district managers, who avers that he maintained compliance with wage and hour laws in the branches in his district.  (Mangold Decl. ¶¶ 1, 5-21.)

[4] *See also* Haller Decl. ¶¶ 9, 15; Koestner Decl. ¶ 6; Mangold Decl. ¶ 7; O'Malley Decl. ¶¶ 7-8; Otte Decl. ¶ 8; Patel Decl. ¶ 10.

[5] *See also* Koestner Decl. ¶ 16; O'Malley Decl. ¶ 8; Otte Decl. ¶ 9; Patel Decl. ¶ 15.

supervisor can make to an employee's timesheet is to reclassify an employee's hours at a *higher* pay rate.  (*Id.*)  Weekly timesheets are processed for payroll *even if the manager has not reviewed and/or approved the timesheet.*  (*Id.*)

Wells Fargo's employee handbook also makes clear that employees must accurately record their time, and they will be paid for all overtime.  It provides:  "If you're in a nonexempt position, you are entitled to pay for all hours actually worked, even those that exceed your regular schedule or that are not authorized before working them.  Therefore, you must report *all* hours worked."  (Goldford Decl. ¶ 7, Ex. A at pg. 40.)  The policies require: "If you're a nonexempt team member, you must fill out and submit timely, accurate online timesheets, through the Webtime online system, in order to receive proper pay including overtime."  (*Id.* at pg. 44.)  Employees are "required to report immediately…any pay discrepancy, including but not limited to wages…."  (*Id.* at pg. 45.)

**C.**   **Plaintiffs' Sole Support for Conditional Certification are Declarations that *Directly Contradict* Plaintiffs' Own Self-Reported Time Records.**

Plaintiffs' only evidence to support their motion is the declaration testimony of five of their eleven named Plaintiffs.  *Plaintiffs' own self-reported time entries in Webtime, as well as their payroll records, directly contradict every single one of these declarations.*[6]

---

[6] Wells Fargo has not had the opportunity to cross-examine these declarants because they have not appeared for deposition, despite the facts that: (a) Wells Fargo has been requesting deposition dates since January 8; and (b) Wells Fargo properly noticed depositions on February 17 – the day after Plaintiffs filed the certification motion.  As of the filing of this brief, Plaintiffs have refused to provide a single deposition date for any declarant before the April 13 hearing.  (Fife Decl. ¶¶ 5-10.)

These declarations also contain objectionable, inadmissible language.  Wells Fargo generally objects to the declarations on the grounds that they lack personal knowledge, lack foundation, are conclusory, contain irrelevant information (such as the number of branches Plaintiffs' "believe" are in a district, are vague and ambiguous (such as saying Plaintiffs "were told" certain things without specifying who told them these things; such claims are irrelevant if Plaintiffs "were told" these certain things by non-supervisors), and rely on hearsay.  All such objectionable language should be stricken.

**1. Plaintiffs Regularly Recorded and Were Paid for Significant Amounts of Overtime.**

The five Plaintiff declarants state that Wells Fargo had a uniform policy prohibiting them from recording more than 40 hours per week (with some exceptions on Saturdays).  (*See* Anyere Decl. ¶ 12 ("Other than Saturdays, I am required to log only 40 hours per week regardless of how many hours I actually work"); Brown Decl ¶ 12 (same); Poe Decl. ¶ 12 (same); Horne Decl. ¶ 15 ("In order to avoid discipline...I logged only 40 hours per week"); Wallace Decl. ¶ 12 ("I was regularly required to log only 40 hours per week regardless of how many hours I actually worked").  Plaintiffs' self-reported time entries – which they verified as accurate when they submitted them electronically – demonstrate that these statements are <u>*wrong*</u>.

---

Wells Fargo specifically objects to and requests to strike the following language in Plaintiffs' declarations on the grounds that they lack foundation and are not based in personal knowledge (*see* Fed. R. Evid. § 602, 901):  "[A]ll of those credit managers were subject to the same terms and conditions regarding working hours and overtime." (Anyere Decl. ¶ 23; Horne Decl. ¶ 23; Wallace Decl. ¶ 22; Brown Decl. ¶ 22; Poe Decl. ¶ 22.)

Wells Fargo objects to and requests to strike the following language in Plaintiffs' declarations on the grounds that they are based on inadmissible hearsay (*see* Fed. R. Evid. § 801, 802):  "In addition I have spoken to numerous other credit managers from other branches who have also complained about the same pay practices" (Anyere Decl. ¶ 24; Horne Decl. ¶ 24; Wallace Decl. ¶ 23; Brown Decl. ¶ 22; Poe Decl. ¶ 22.); "I know of at least one individual who was counseled for attempting to log his overtime.  He was told to stop" (also lacks foundation).  (Horne Decl. ¶ 14.)

Wells Fargo objects to and requests to strike the following language in Plaintiffs' declarations on the grounds that:  (a) they lack foundation and are not based in personal knowledge (*see* Fed. R. Evid. § 602, 901); (b) they are based on inadmissible hearsay (*see* Fed. R. Evid. § 801, 802); and (c) they draw legal conclusions constituting impermissible opinion testimony (*see* Fed. R. Evid. § 701, 702, 704):  "Between the credit managers who have worked in my branch and other credit managers who have expressed that they were subject to the same pay practices, I am aware of more…individuals who are similarly situated to me."  (Anyere Decl. ¶ 25; Horne Decl. ¶ 25); "I am also aware that many of these people are current employees of Wells Fargo and are afraid to take action for fear of losing their jobs or of other retaliatory conduct and I believe that if these people received a court supervised letter regarding this case, they would want to join it."  (Anyere Decl. ¶ 26; Horne Decl. ¶ 26.)

Wells Fargo objects to and requests to strike Exhibit A to each of the five Plaintiff declarations, as well as Exhibit 6 to Plaintiffs' Motion, on the grounds that:  (a) they are conclusory, made without the necessary predicate facts (i.e., the amount of time declarants allegedly worked off the clock) to support these damages analyses, and lack foundation (*see* Fed. R. Evid. § 602, 901); and (b) the amount of Plaintiffs' alleged damages is not relevant to conditional certification.  (*See* Fed. R. Evid. § 402.)

Anyere, for example, recorded and was paid for overtime (i.e., hours far over 40 hours per week) approximately 66% of the time, in 76 out of a total 115 workweeks – the majority of which included more than 40 hours recorded on weekdays.  (*See* Swanson Decl. ¶¶ 12-13, Exs. C, H.)  The average amount of overtime Anyere recorded in those 76 weeks was 8.07 hours – although he regularly recorded and was paid for over 10 hours of overtime per week, and in one instance recorded and was paid for over 19 hours of overtime for a single workweek!  (*See id.*)

The four other declarants similarly recorded and were paid for significant amounts of overtime:  Brown recorded and was paid for overtime in 76.74% of his workweeks, with an average of 2.94 hours of overtime in those weeks.  Poe recorded and was paid for overtime in 34.09% of his workweeks, with an average of 2.433 hours of overtime in those weeks.  Horne recorded and was paid for overtime in 58.64% of her workweeks, with an average of 3.87 hours of overtime in those weeks.  Wallace recorded and was paid for overtime in 41.49% of her workweeks, with an average of 2.73 hours of overtime in those weeks.  (*See id.* at ¶¶ 12-13; Exs. D-G, I-L.)

Plaintiffs were paid for all overtime they entered, whether or not their branch managers approved the time.  (*See id.* at ¶¶ 12-13; Exs. D-G, I-L.)[7]  These contemporaneous, self-reported time entries show Plaintiffs' claims that they uniformly could not record over 40 hours per week are false.

---

[7] *See also* Haller Decl. ¶ 14 ("I never adjusted Anyere's time entries, and he was paid for all of the time that he entered"), ¶¶ 22-23 ("I noticed that Anyere was regularly recording several hours of overtime per week, but I saw little evidence of his working those additional hours….I did not, however, adjust his time entries and – to my knowledge – Anyere was paid for all of the time that he worked and recorded"); Otte Decl. ¶ 12 ("I never saw Cornelius work off the clock; nor did he ever complain that he was working off the clock….When he was at his desk, he frequently surfed the internet and read the newspaper.  Nevertheless, I approved whatever time he entered as a matter of course and never challenged him on any of his time entries"); Patel Decl. ¶ 26 ("To the best of my recollection, Mr. Anyere frequently recorded overtime, which I always approved").

2.      **Plaintiffs Regularly Recorded that They Arrived to Work Prior to 9:00 a.m.**

The five declarants claim that Wells Fargo had a uniform policy of requiring them to arrive at work at 8:45 a.m. but record they started work at 9:00 a.m., and that Wells Fargo did not pay for this extra 15 minutes of work time. Again, Plaintiffs' own time records demonstrate that these claims are wrong.

Anyere, for example, recorded that he began work before 9:00 a.m. <u>over 65%</u> of the time (i.e., for 362 out of a total 554 days – excluding days when he took paid time off instead of reporting to work) and that he started working as early as 7:24 a.m.[8]  In contrast, Anyere recorded a 9:00 a.m. start time only 73 times – or 13% of his workdays – and also frequently recorded that he arrived to work late.  (Swanson Decl. ¶ 13, Ex. H.)[9]

The remaining four declarants all recorded they began work before 9:00 a.m.:  Brown recorded starting work before 9:00 a.m. (and as early as 8:00 a.m.) 85% of the time; he recorded beginning at 9:00 a.m. only 6.7% of the time.  Wallace recorded starting work before 9:00 a.m. (and as early as 8:00 a.m.) 51% of the time; she recorded beginning at 9:00 a.m. 42% of the time. Poe recorded starting work before 9:00 a.m. (and as early as 8:30 a.m.) 8.6% of the time; he recorded beginning at 9:00 a.m. 88% of the time.  Horne recorded starting work before 9:00 a.m. (and as early as 8:00 a.m.) 13% of the time; she recorded beginning at 9:00 a.m. 81% of the time. (*Id.* at ¶ 13; Exs. I-L.)

The five declarants' time records show they all recorded work before 9:00 a.m. (as often at 85% of the time) and payroll records show they were compensated for this time.  (*Id.* at ¶¶ 12-

---

[8] *See also* Haller Decl. ¶ 14 ("Anyere regularly recorded his starting time as 8:45 a.m., even though that was the time he arrived – not the time he actually started working").

[9] Anyere's managers confirm that he frequently arrived to work late.  (Otte Decl. ¶ 12 ("he would frequently come into work more than an hour late"); Patel Decl. ¶ 25 ("Mr. Anyere routinely arrived late, after the branch had opened for the day").)

13, Exs. C-L.)  Plaintiffs' claims of a "policy" requiring them to clock in at 9:00 a.m. are unsubstantiated.

### 3.     Plaintiffs Were Not Required to Work Through Lunch Unpaid, and Each Reported and Were Paid for "Working Lunches."

The five Plaintiff declarants claim they were required to work through lunch, but had to clock out for that time.  This testimony is false.  Plaintiff Anyere, for example, did not clock out for lunch (or logged less than 30 minutes) 59% of the time.[10]  The remaining four declarants did not record lunch breaks ranging from 5.31% of the time to 12.12% of the time.  Wells Fargo compensated them for this recorded time.  (*Id.* at ¶¶ 12-13; Exs. C-L.)  There is no evidence of a common policy that forced credit managers to clock out for lunch but to continue working.

### 4.     Plaintiffs Recorded and Were Paid Overtime For Work After 6:00 p.m.

The five declarants claim they were not allowed to record time they worked after 6:00 p.m.  These claims are completely contradicted by Plaintiffs' own self-reported time records.  Brown and Anyere both recorded that they stopped working after 6:00 p.m. over 50% of the time, while the remaining declarants recorded that they ended their workdays after 6:00 p.m. ranging from 7.5 to 28.15% of the time.  (*Id.* at ¶ 13; Exs. H-L.)  Plaintiff Anyere recorded up to 13.917 hours in a single day.  He clocked out as late as 11:00 p.m.[11]  The other declarants all recorded they worked until 8:00 p.m. or later, and at least 10 hours per day, on occasion.  (*Id.* at ¶ 13; Exs. H-L.)  The declarants were all paid for this time.  (*Id.* at ¶ 12, Exs. C-G.)

---

[10] Wells Fargo's policy permits credit managers to take a one-hour meal period every day.  Goldford Decl. ¶ 8, Ex. A; Haller Decl. ¶ 15; Koestner Decl. ¶¶ 13-15; Mangold Decl. ¶¶ 18-19; O'Malley Decl. ¶ 6; Otte Decl. ¶ 6; Patel Decl. ¶ 27.

[11] Incidentally, 11:00 p.m. is long after the time it would have been appropriate for Anyere or any credit manager to be calling customers – which, Plaintiffs admit, is the credit managers' essential job function.

**5.      Plaintiffs Recorded and Were Paid for Work on the Weekends.**

Plaintiffs claim that they worked two to three hours on some Saturdays, but had to record less.  But Anyere recorded that he worked a total of 41 Saturdays – on average 4.74 hours.  He never recorded that he worked *less* that two hours those days, only recorded that he worked as few as two hours on those Saturdays *twice*, and recorded as much as 11 hours of work on one Saturday.  (*Id.* ¶ 13, Ex. H.)  The other declarants also recorded that they worked a significant number of Saturdays, usually somewhere between 2 to 5 hours.  (*Id.* at ¶ 13; Exs. I-L.)

Plaintiffs cannot support even one of their alleged "common policies and practices" with truthful testimony.

**D.      Plaintiffs' False Declarations Are Further Contradicted by the Testimony of their Supervisors.**

Several of Plaintiffs' branch and district managers confirm that they consistently enforced Wells Fargo's established policy of paying for all hours worked, and that all credit managers (including Plaintiffs) regularly recorded and were paid for all time worked.[12]  These managers all agree that there is no incentive to reduce overtime in the branches, since their compensation and the branches' performance depend on *sales* – not on profits – and do not take into account labor costs at the branches.[13]

**IV.  ARGUMENT**

This Court should deny Plaintiffs' motion because they have failed to meet their burden to show they and the proposed collective action members are "similarly situated" as victims of a single unlawful policy or plan denying them overtime compensation.

---

[12] *See* Haller Decl. ¶¶ 8-11, 18-23; Koestner Decl. ¶¶ 5-10, 12, 16-19; Mangold ¶¶ 13-14, 20-21; O'Malley Decl. ¶¶ 7-9; Otte Decl. ¶¶ 7-10; Patel Decl. ¶¶ 9-17, 21, 34.

[13] *See* Koestner Decl. ¶¶ 22-23; Mangold Decl. ¶¶ 11-12, 16-17; O'Malley Decl. ¶ 10; Otte Decl. ¶ 11; Patel Decl. ¶¶ 18-20, 22.

**A.**  **The Legal Standard for Conditional Certification and Court-Authorized Notice Under 29 U.S.C. § 216(b).**

The Fair Labor Standards Act ("FLSA") does not require conditional certification or notice to the collective action members.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("district courts have *discretion, in appropriate cases*, to implement 29 U.S.C. § 216(b)…actions by facilitating notice to potential plaintiffs); *see also Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 944 (W.D. Ark. 2003) ("[a]lthough a district court has discretion to authorize notice to similarly situated employees of the opportunity to opt-in to a class, the giving of such notice is not mandatory").[14]  The Supreme Court highlighted that the only "appropriate case" is one where plaintiffs show "other employees [are] similarly situated" *and* where the judicial system would "benefit[] by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche Inc.*, 493 U.S. at 170; s*ee also Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983).

---

[14] Although the Seventh Circuit, in *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982), stated that "we do not think that the power to regulate the sending of notice, once suit has commenced, includes the power to forbid the sending of notice altogether," that case did not consider a situation where – as here – Plaintiffs cannot meet their burden of proving they are similarly situated to the proposed collective action members.  District courts in the Seventh Circuit have subsequently refused to conditionally certify a collective action and authorize notice to employees where Plaintiffs have failed to meet their burden.  *See Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 555-56 (N.D. Ill. 2008) (refusing to disclose the names and contact information of – and allow plaintiffs to distribute notice to – employees outside of the facility where named plaintiffs worked, on the grounds that plaintiffs had not shown they were similarly situated to employees outside of their facility); *Riddle v. Nat'l Sec. Agency, Inc.*, No. 05 C 5880, 2007 WL 2746597, at *2 (N.D. Ill. Sept. 13, 2007) (denying conditional certification of plaintiffs' claims for overtime where plaintiffs did not support their allegations of a common policy or plan with sufficient evidence); *North v. Bd. of Trustees of Ill. State Univ.*, ---F.Supp.2d---, 2009 WL 3769907, at *5 (C.D. Ill. Nov. 9, 2009) (granting conditional certification only as to 2007 conference assistants and not "other 2007 employees" or "pre-2007 conference assistants" where plaintiffs "failed to show that there is an 'identifiable factual nexus' binding the groups' claims together"); *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008) (denying motion for conditional certification because plaintiffs "failed to make the minimal factual showing that would warrant conditional certification of a collective class").

Courts in this district endorse a two-stage procedure for managing collective actions. Under the first stage, Plaintiffs "must show that there are similarly situated employees who are potential claimants" in order to achieve "conditional" certification of the collective action. *Collazo v. Forefront Educ., Inc.*, No. 08-cv-5987, 2010 WL 335327, at *2 (N.D. Ill. Jan. 28, 2010). Plaintiffs must make a "*modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law*." *Id.* (quoting *Flores*); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (emphasis added). While the standard at this stage may be "lenient," it is *still Plaintiffs' burden* to make this showing, and this is "not a mere formality." *Collazo*, 2010 WL 335327, at *3. "Despite the liberal standard applied at step one of conditional certification courts still require plaintiffs to make factual allegations supported by admissible evidence." *Acevedo*, 248 F.R.D. at 555. Thus, "courts in this circuit...decline to certify a class where plaintiffs fail to provide sufficient proof regarding similarly situated employees."[15] *Id.*

**B.     Plaintiffs Have Failed to Make Even a Modest Showing that They and Potential Plaintiffs Were Victims of a Single Policy or Plan That Violated the Law.**

Plaintiffs have failed to meet their burden even under the lenient first-stage standard for conditionally certifying a collective action because: (1) they cannot manufacture a "common policy" with declarations that are contradicted by their own self-reported time records; (2) even if their declarations were true, they have not shown a policy that extends beyond their own supervisors to credit managers statewide in Illinois and Indiana; and (3) individual issues predominate, making collective treatment unsuitable.

---

[15] The requirement that Plaintiffs make their showing at this stage "serves as an important and functional step in the certification process" and is supported by public policy. *Adair*, 2008 WL 4224360, at *4. Namely, "[i]t would be a waste of the Court's and the litigant's resources to notify a large and diverse class only to later determine the matter should not proceed as a collective action because the class members are not similarly situated." *Id.* (quoting *Freeman*); *Freeman*, 256 F. Supp. at 945.

1.      **Plaintiffs' Attempts to Show a Common Policy or Practice Fail Because
Their Declarations Are Fabricated.**

The only evidence the Plaintiffs provide is five apparently false declarations.  In

determining whether plaintiffs have met their burden under first-stage conditional certification,

"*it certainly matters whether statements made under oath in a declaration are true*."  *Adair*,

2008 WL 442360, at *5.  Illinois district courts "take[] very seriously the submission of

materially false declarations."  *Bryant v. Gardner*, 587 F. Supp. 2d 951, 970 (N.D. Ill. 2008).

Indeed, Fed. R. Civ. P. 56(g) recognizes that in the context of motions for summary judgment, a

party submitting affidavits in bad faith must pay reasonable expenses, including attorneys' fees,

incurred as a result of the submission of such affidavits.

Here, every assertion made by each of the five declarants that they were subject to

common policies depriving them of overtime are false:

(1)  Plaintiffs claim they were only allowed to record 40 hours of work per week (except
some aver they were allowed to record overtime on Saturdays).  Yet *all five*
declarants recorded and were paid for a significant amount of overtime, and did so
from 36% and 76% of their workweeks (and many overtime weeks exclude Saturday
time).

(2)  Plaintiffs claim they uniformly began working at 8:45 a.m., but had to record that
they began working at 9:00 a.m.  Yet *all five* declarants recorded they arrived to work
*before* 9:00 a.m. (and often even earlier than 8:45 a.m.) ranging anywhere from 8.6%
to 85% of the time, and they were paid for this time.

(3)  Plaintiffs claim they uniformly had to work through meal periods and were not paid
for that time.  Yet *all five* declarants had days when they did not clock out for their
meal periods (5% to 59% of the time) and they were paid for that time.

(4)  Plaintiffs claim they uniformly were not allowed to record time worked after 6:00
p.m. on weekdays.  Yet *all five* declarants recorded significant amounts of time after
6:00 p.m.

(5)  Plaintiffs claim that they actually worked 2-3 hours on some Saturdays, but they
uniformly were not allowed to record all of the time they worked on Saturdays.  Yet
*all five* declarants recorded that they worked at least *2-4* hours (and up to 11 hours) on
Saturdays.

(*See* Swanson Decl. ¶¶ 12-13; Exs. C-H.)  Plaintiffs have not demonstrated that they themselves

were subjected to _any_ illegal overtime practices – much less that they and others were subject to a "common" illegal policy or practice.

Plaintiffs will likely argue that at this stage the Court should ignore Wells Fargo's evidence, such as time records, payroll records, and policies. But "neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be seriously advanced if [the court] were to overlook those facts which pointedly reflect that a collective action would be improper." _Thompson v. Speedway SuperAmerica LLC_, No. 08-CV-1107(PJS/RLE), 2009 WL 130069, at *10 (D. Minn. Jan. 20, 2009). In the Rule 23 context, district courts are free to make "whatever factual and legal inquiries are necessary" to ensure the class certification requirements are satisfied. _Szabo v. Bridgeport Machs., Inc._, 249 F.3d 672, 675-77 (7th Cir. 2001). "[T]he same guidance has been followed in the closely analogous collective action setting." _Powers v. Centennial Communications Corp._, --- F. Supp. 2d ----, No. 1:08-cv-208-PPC, 2009 WL 5170161, *9 (N.D. Ind. Dec. 14, 2009). Thus, "the court is under no obligation, as it would be on a motion to dismiss, to accept all the plaintiffs' allegations as true" and instead is free to "evaluate[] the record before it, including…oppositional affidavits, to determine whether the plaintiffs are similarly situated to other putative class members." _Howard v. Securitas Sec. Svcs., USA Inc._, No. 08 C 2746, 2009 WL 140126, *5 (N.D. Ill. Jan. 20 2009). Because Plaintiffs' only "facts" supporting conditional certification are demonstrably false, the Court should deny conditional certification.

> **2.      Even if True, the Five Declarations Fail to Identify a Common Policy that Merits Conditional Certification.**

The five declarants claim their individual supervisors told them not to record more than 40 hours per week. But they fail to identify a common policy or practice extending beyond their individual supervisors.

Plaintiffs cannot meet the "similarly situated" requirement by merely claiming the same violations of the law by the same employer. *Marsh v. Butler County School Sys.*, 242 F. Supp. 2d 1086, 1094 (M.D. Ala. 2003); *see also Adair*, 2008 WL 4224360, at * 6 ("'[u]nsupported assertions of FLSA violations are not sufficient to meet Plaintiffs' burden'") (internal quotation and citation omitted); *Haynes*, 696 F.2d at 887 (same). Plaintiffs must instead provide specific evidence regarding the origin of the alleged policy or plan. *Dager v. City of Phoenix*, No: 2:06-cv-01412 JWS, 2006 U.S. Dist. LEXIS 91336, at *16 (D. Ariz. Dec. 15, 2006) (denying conditional certification, finding "[w]hile plaintiffs baldly allege that '[d]efendants' common procedures and policies are centrally formulated and dictated by Defendants, they do not allege with any specificity what division or official(s)...makes these uniform decisions regarding overtime pay").

Here, the only "common" policies are policies *requiring* the payment of overtime and *prohibiting* credit managers from working off-the-clock.[16] Plaintiffs have not alleged that Wells Fargo implemented a contrary common policy in Illinois and Indiana. Nor have they attempted to describe the origin of the alleged policies they claim operated to deny them overtime.

The five declarants have also failed to show how the individual actions of their supervisors translate to all credit managers in Illinois and Indiana. "Alleged FLSA violations stemming from the enforcement decisions of individual supervisors, rather than a company-wide policy or plan are not appropriate for collective treatment." *Adair*, 2008 WL 4224360, at *7. Where evidence demonstrates that any alleged "policy" to deny overtime was "not even uniformly or systematically implemented at any given store," conditional certification of an

---

[16] Goldford Decl. ¶¶ 5-7, Ex. A; Swanson Decl. ¶ 9; Haller Decl. ¶¶ 9-11, 19; Koestner Decl. ¶¶ 5-6, 9, 12, 15-18; Mangold Decl. ¶¶ 7, 13; O'Malley Decl. ¶ 8; Otte Decl. ¶ 8; Patel Decl. ¶ 10.

FLSA overtime case is inappropriate.  *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at *7 (E.D. La. July, 2, 2004); *see also Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987) (proposed class not similarly situated because employment decisions were made "by different supervisors...on a decentralized employee-by-employee basis").

Plaintiffs do not offer any evidence that the alleged "policies" of their individual supervisors are followed by other supervisors, other than speculative and conclusory statements that other employees suffered the same harms.  Their generalized statements based on alleged conversations with other credit managers are not sufficient to support conditional certification:

> [A] plaintiff may not substitute her own judgment for the Court's by averring her "understanding" that her employer had a widespread improper practice, while shielding the Court's review of her conclusion and the sufficiency of the facts on which it is based by general assurances that it was formed by her observations and conversations with others.  Here, in other words, the plaintiffs may not avoid the requirement of demonstrating to the Court a modest factual showing of support for their claim that they and the putative class were subject to a common unlawful practice by vague assertions that they "understood" this to be true.

*Adair*, 2008 WL 4224360, at *10; *see also Thompson*, 2009 WL 130068, at *13 ("some reasonably reliable basis for certification of a collective action is required").

The five declarants' *<u>own admissions</u>* reveal differing policies or practices that make conditional certification inappropriate.  Horne admits she was allowed to record her overtime as of the time she signed her declaration, and that her ability to record overtime varied over her employment with Wells Fargo.  (*See* Horne Decl. ¶ 12 ("Until very recently (the last three months) I was required (with rare exceptions) to log only 40 hours per week regardless of how many hours I actually worked").)[17]  Wallace states she could only record 40 hours per week.

---

[17] This is not true.  Horne's time and payroll records show that she recorded and was paid for overtime throughout her employment with Wells Fargo, starting with 4.5 hours of overtime as early as her fifth week of employment.  (*See* Swanson Decl. ¶¶ 12-13, Exs. F, K.)

The other four declarants admit they were allowed to record some overtime on Saturdays. Because Plaintiffs concede circumstances in which some credit managers are allowed to record their overtime where others are not, they present "different circumstances under which the declarants were allegedly required to work unpaid overtime," which "weighs against certification" – just as in *Castle*, 2008 WL 495705 at *5.

Plaintiffs have failed to identify a common policy or plan to deny them overtime pay, and their motion for conditional certification should be denied.

**3.     Any Individual's Entitlement to Overtime Requires a Fact-Specific, Individualized Inquiry Unsuitable for Collective Action.**

Courts deny conditional certification when allegations show that adjudication of the claim will require individualized inquiries even though similar legal issues exist.[18]  The relevant factors for determining whether plaintiffs are similarly situated – even at first-stage conditional certification – include:

> (a) similarities and differences in the employment and other factual settings of the various plaintiffs, including whether plaintiffs had differing job titles or assignments, worked in different locations, were under different supervisors or decisionmakers, or allege different types of violative conduct; (b) the extent to which the plaintiffs will rely on common evidence; (c) defenses available to defendant and whether the defenses are individual to each plaintiff; and (d) fairness and procedural considerations, including whether a trial may be coherently managed in a way that will not confuse the jury or unduly prejudice a party.

---

[18] *See Holt v. Rite Aid Corp*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (declining to conditionally certify collective action where individualized nature of the potential plaintiff's claims would diminish "economy of scale envisioned by the FLSA collective action"); *Reich v. Homier Distributing Co.*, 362 F. Supp. 2d 1009, 1013-15 (N.D. Ind. 2005) (refusing to conditionally certify where defendant's liability to any particular plaintiff would depend on a set of facts specific to that individual); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) ("an action dominated by issues particular to individual plaintiffs cannot be administered efficiently because individual issues predominate over collective concerns"); *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 569 (N.D. Ala. 1995) (denying certification in part because court would be faced with numerous individualized defenses); *Basco v. Wal-Mart Stores Inc.*, No. Civ. A. 00-3184, 2004 WL 1497709, at *8 (E.D. La. July 2, 2004) (denying certification where "potential defenses to any alleged FLSA overtime violations will require highly individualized evidence concerning each associate").

*Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007).

In *Castle*, 2008 WL 495705, the Northern District of California declined to conditionally certify a collective action of Wells Fargo credit managers because:

> Resolution of plaintiffs' claims would require individualized determinations, and would necessitate testimony from individual employees and their supervisors about the schedules actually worked and whether managers were aware of the overtime hours worked. Plaintiffs' claims of altered time cards would similarly require class member-specific testimony and evidence regarding the circumstances surrounding the alterations, and defendant would be entitled to show that any alterations were made for legitimate reasons, which could differ for each class member.

*Id.* at *5. Based on similar considerations, courts frequently deny certification of FLSA collective actions alleging "off the clock" violations.[19] For example, in *Williams*, the district court recognized that, unlike in an overtime exemption case, in an "off-the-clock" case "[l]iability cannot be determined by considering the employee's job duties. Rather, every employee must testify about his awareness of the overtime policy, and his violation of that policy – and whether it was compelled by his or her branch manager." *Williams v. Accredited Home Lenders, Inc.*, No. 1:05-CV-1681-TWT, 2006 WL 2085312, at *4 (N.D. Ga. July 25, 2006).[20]

---

[19] *See, e.g., Velasquez v. HSBC Finance Corp.*, No. 08-4592 SC, 2010 WL 625357, at *3-9 (N.D. Cal. Feb. 18, 2010); *Adair*, 2008 WL 4224360, at *12; *Thompson*, 2009 WL 130069, at *13; *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *6 (S.D. Tex. Jan. 24, 2007); *West v. Border Foods, Inc.*, Civil No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *7-10 (D. Minn. July 10, 2006); *Williams*, 2006 WL 2085312, at *4-5; *Hinojos v. The Home Depot, Inc.*, No. 2:06-CV-00108, 2006 WL 3712944, at *2 (D. Nev. Dec. 1, 2006); *Diaz v. Elec. Boutique of America*, No. 04CV0840E(SR), 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 870-71 (S.D. Ohio 2005); *Lawrence v. Philadelphia*, No: 03-CV-4009, 2004 WL 945139, at *2 (E.D. Pa. April 29, 2004); *Marsh v. Butler*, 242 F. Supp. 2d 1086, 1094-95 (M.D. Ala. 2003); *Basco*, 2004 WL 1497709, at *8; *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002); *Bernard v. Household Int'l, Inc.* 231 F.Supp. 2d 433, 435-36 (E.D. Va. 2002); *Dudley v. Tex. Waste Sys.*, No: SA-05-CA-0078-XR, 2005 WL 1140605, at *2-3 (W.D. Tex. May 16, 2005).

[20] Plaintiffs claim that the fact that they perform "the same job duties" supports conditional certification, citing distinguishable cases. Two involve plaintiffs' challenge to the *exempt status* of employees, and thus job duties were squarely at issue – not "off-the-clock" cases. *See Dybach v. State of Fla. Dept. of*

Here – just as in *Castle* and over a dozen other "off the clock" cases – resolution of Plaintiffs' claims would require testimony from individual supervisors and other employees about the circumstances giving rise to each alleged violation.  For example, Wells Fargo would be entitled to contest whether any off-the-clock work actually occurred, to demonstrate that – even if it did occur – individual supervisors did not know about the off-the-clock work,[21] and to show particular supervisors acted in good faith.  With respect to allegations regarding changes to time records, Wells Fargo would be entitled to show that any changes were made for appropriate reasons such as legitimate errors made by credit managers.  The resulting need for individualized determinations make collective action treatment impractical and unmanageable.  Plaintiffs have made no proposal regarding how their claims could be resolved collectively.  *See Freeman*, 256 F. Supp. 2d at 945 (even at the outset of a collective action, "it is incumbent on [a plaintiff] to propose a class that is sufficiently defined and manageable"); *Ray v. Motel 6 Operating, LP*, No. 3-95-828, 1996 WL 938231, a t*4 (D. Minn. Mar. 18, 1996) (at notice stage, court "must also look to specific factual similarities or differences and manageability concerns" before conditionally certifying a class); *Basco,* 2004 WL 1497709, at *8 (denying certification where

---

*Corrections*, 942 F.2d 1562 (11th Cir. 1991); *Champneys v. Ferguson Enter. Inc.*, No: IP 02-535-C H/K, 2003 WL 1562219 (S.D. Ind. Mar. 11, 2003).  Indeed, in "off the clock" cases – as opposed to misclassification cases – the relevant inquiry is not whether the employees all had the same job duties, but whether the employer failed to pay overtime.  *See Velasquez*, 2010 WL 625357, at *3.  The third case Plaintiffs cite is distinguishable because the court expressly declined to conditionally certify a collective action involving employees at any station other than where the named plaintiffs worked.  *Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 948 (M.D. Fla. 1994) (notwithstanding evidence that companies held themselves out to public as same company and shared some administrative functions, and that some clerical employees at other terminals complained about long hours or filed overtime claims with Department of Labor; there was no evidence as to pay provisions or job requirements of other clerical employees, and wage rate decisions were made on terminal-by-terminal basis).

[21] To the extent any of the declarants or any other credit managers worked off the clock, none of the branch managers knew of it.  (Haller Decl. ¶¶ 8, 10-11, 14, 21-23; Koestner Decl. ¶¶ 18-19; Mangold Decl. ¶ 8 (only aware of one instance of off the clock work years ago, and he raised to it Human Resources, who investigated it); O'Malley Decl. ¶ 9; Otte Decl. ¶ 10; Patel Decl. ¶¶ 13, 21, 34.)

18

the nature of the claims presented "enormous manageability problems").

**C.**     **The Court Should Deny Plaintiffs' Motion Because the Geographic Scope of the Proposed Collective Action is Overbroad.**

Even if the Court finds that Plaintiffs have met their burden of showing that a collective action of some size should be conditionally certified, Plaintiffs have provided no basis for sending notice to:  (a) Indiana credit managers; or (b) Illinois credit managers outside of Plaintiffs' branches.  Plaintiffs have not presented any evidence beyond hearsay and speculation regarding the overtime pay practices beyond their own branches.  *See*, *e.g.*, *Collazo*, 2010 WL 335327, at *3 (when plaintiffs sought conditional certification in Illinois and Florida, the court denied certification of a Florida class because "[w]ithout *any* evidence of similarly situated employees in Florida, Plaintiffs' Motion to gain conditional class certification as to...Defendants' Florida locations appears to be little more than a speculative fishing expedition"); *Molina*, 566 F. Supp. 2d at 789 (limiting notice to Chicago territory where plaintiffs did not present evidence to support that the same practices existed outside of that territory).

**D.**     **The Statute of Limitations Should Not Be Tolled.**

The Court should deny Plaintiffs' request to equitably toll the statute of limitations during the pendency of their conditional certification motion.[22]  There is no legal support for this request, and Plaintiffs' cited cases suggest that equitable tolling *should not* be granted here.

Courts should suspend the statute of limitations only when "supported by substantial policy reasons."  *Partlow v. Jewish Orphans' Home of So. Cal., Inc.*, 645 F.2d 757, 761 (9th Cir. 1981) (abrogated on other grounds by *Hoffman-LaRoche*, 493 U.S. 165).  Indeed, courts extend

---

[22] The Court should also deny Plaintiffs' implicit request to equitably toll the statute of limitations as of the date of the filing of their complaint, which is evidenced by their request that the Court issue notice to credit managers in Illinois and Indiana who were employed within three years of the filing of their Complaint.  This request is entirely inconsistent with the explicit language of the FLSA.  29 U.S.C. § 256.

"equitable relief _only sparingly_."  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)

(emphasis added).  As the Seventh Circuit has recognized:

> Statutes of limitations are not arbitrary obstacles to the vindication of just claims,
> and therefore they should not be given a grudging application.  They protect
> important social interests in certainty, accuracy, and repose. The statute of
> limitations is short...in most employment cases because delay in the bringing of suit
> runs up the employer's potential liability; every day is one more day of backpay
> entitlements.  We should not trivialize the statute of limitations by promiscuous
> application of tolling doctrines.

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452-53 (7th Cir. 1990) (denying equitable

tolling).

Plaintiffs rely on *Schultz v. American Family Mut. Ins. Co.*, No. 04 C 5512, 2005 WL

5909003, at *5 (N.D. Ill. Nov. 1, 2005), where the court *denied* equitable tolling based on

plaintiffs' assertions that the collective action members were ignorant of the lawsuit.  The court

noted, "Ignorance of a lawsuit, however, is not the same as ignorance of a claim," finding that

mere ignorance of a lawsuit does not support equitable tolling.  *Id.*  Plaintiffs here do not assert

that Wells Fargo prevented them from learning about their claims.  Instead, they speculate Wells

Fargo might cause delay in the granting of the motion or in producing a class list.  Such rank

speculation does not support equitable tolling.[23]

## V.  CONCLUSION

The only evidence Plaintiffs have offered are materially false declarations that – even if

believed – do not even make the "minimal showing" necessary.  Plaintiffs' motion should be

denied with prejudice.

---

[23] Plaintiffs make several requests regarding the form of the proposed class notice and disclosure of
putative class members that are unnecessary and unsupported by law.  Wells Fargo addresses these in
detail in its Objections to Plaintiffs' Proposed Judicially Supervised Notice, filed concurrently herewith.

Dated:  March 9, 2010

Respectfully submitted,

WELLS FARGO


By: ____/s/ Joan B. Tucker Fife_____
                  One of its Attorneys

Joan B. Tucker Fife
WINSTON & STRAWN LLP
101 California Street
San Francisco, California  94111
(P) 415-591-1000
(F) 415-591-1400
jfife@winston.com

Emilie C. Woodhead
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA  90071
(P) 213-615-1700
(F) 213-615-1750
ewoodhead@winston.com

Amanda C. Wiley
WINSTON & STRAWN LLP
35 West Wacker Avenue
Chicago, IL 60601
(P) 312-558-5600
(F) 312-558-5700
awiley@winston.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of March 2010, I caused a copy of the foregoing to be served on counsel for Plaintiffs via the Court's electronic filing system to:

Aaron Maduff
Walker Lawrence
MADUFF & MADUFF LLC
205 North Michigan Avenue Suite 2050
Chicago, IL 60601-5927

<u>        /s/ Joan B. Tucker Fife        </u>
Joan B. Tucker Fife

LA:266202.14

22